DUNSFORD v. BROWN.

1. Action being brought by a ward, after his majority, against his guardian, simply for an account, ignoring a settlement had between them and making no allegation or proof of any misrepresentation, undue influence, imposition or fraud, the settlement and receipt are a bar to the action, and the complaint should be dismissed.

2. It was error in the Circuit judge, at the trial, to treat an action for an accounting (which was barred by an unassailed settlement and receipt between the parties) as changed into a direct attack upon the settlement and receipt.

3. Amendments before trial may be allowed with great liberality to the end that the action may not be defeated for errors of form merely ; but amendments at a later stage of the cause, " conforming the pleadings to the facts proved," should not be ordered where thereby the parties are surprised or misled, or the issues are wholly changed.

4. Where a receipt in full is pleaded in bar of the accounting demanded by the complaint, it is error to order the account stated until the plea in bar has been disposed of.

5. A settlement made between a guardian and ward on the day after the ward attained his majority, and a receipt in full then given by the one to the other, are conclusive upon the ward, if there was, on the part of the guardian, no concealment, misrepresentation, imposition, fraud or personal advantage secured.

Before KERSHAW, J., Richland, November, 1882.

The opinion fully states the case.

*Messrs. John T. Sloan, Jr.,* and *W. H. Lyles,* for plaintiff.

*Messrs. Abney & Abney,* contra.

July 31st, 1883. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action in the nature of a bill in equity by Francis W. Dunsford against Thomas R. Brown, his late guardian and his sureties on the guardianship bond, for an account of his guardianship. Brown, the defendant, the sureties concurring, pleaded in bar to the account asked for, that on May 21st, 1880, after the plaintiff had attained to the age of twenty-one years (the day after), the said guardian had a settlement with his ward, the plaintiff, in the Probate office for Richland county, before Andrew Crawford, Esq., then Probate judge, and with his concurrence, and upon that settlement the said Probate judge ascertained that the sum of $1,496.78 was due to the said ward, the plaintiff, which was paid in full to the said plaintiff, who, being entirely satisfied with the settlement, received the money and gave his receipt in full, drawn by the said Probate judge, absolving him from all further responsibility in connection with the guardianship, and which is in the following terms:

" Received, Columbia, January 9th, 1880, of Col. Thomas Brown, guardian of Francis W. Dunsford, fourteen hundred and twenty-eight dollars due to said ward from the guardian aforesaid, to be retained by me as judge of Probate, until a final discharge shall be granted to said guardian.
"ANDREW CRAWFORD, *J. P.*"

"Also this 10th April, 1880, four hundred and twenty-eight dollars, due on Mrs. A. G. Adams' bond.
"ANDREW CRAWFORD, *J. P.*"

" Received, Columbia, May 21st, 1880, of Andrew Crawford, judge of Probate, fourteen hundred and ninety-six seventy-eight one hundredths dollars, in full and final settlement of all claims I have against my guardian, Thomas R. Brown, and I do in this manner absolve him from all responsibility in connection with the guardianship, as I am now twenty-one years of age. And I take this step after the judge of Probate has fully explained everything to me connected with my affairs.
" F. W. DUNSFORD.
" Witness, J. MEIGHAN."

2L

The case was referred to Nathaniel B. Barnwell, Esq., the master, " to take the testimony upon all the matters of fact arising on the pleadings, to state the accounts and to report the same," &c. The master reported the facts to be substantially as follows:

In 1860, the plaintiff, Francis W. Dunsford, was left an orphan, being under two years of age, and was taken by his grandfather, R. J. Dunsford, a poor man, and supported and clothed by him for eleven years. It seems that at that time the child was entitled to a handsome estate in the hands of one Jesse Drafts, his first guardian, who died intestate in August, 1865. The administrators of Drafts, the guardian, refused to account for any of the estate of the ward which had been received by their intestate, the first guardian, claiming that it had been invested in Confederate bonds and lost. At that time, soon after the war, it was difficult to get any one to accept the appointment of guardian, in order to test the responsibility of Drafts, for the ward's estate; but, finally, a neighbor, William Weston, was prevailed upon to take the guardianship in August, 1870.

He found that neither Drafts nor, after his death, his representative, had rendered any assistance to the ward, who had been supported by his grandfather, R. J. Dunsford, as before stated; and, in doing so, the grandfather had contracted a debt to Weston of something over $600. Weston, as guardian, employed counsel and instituted two suits against the representatives of Drafts. At first he was unsuccessful; but, finally, he succeeded in getting a compromise, by which he secured for the ward the sum of $4,205.38, which, without his efforts, might have been lost. Out of this money thus secured for the ward he paid an account to the grandfather, R. J. Dunsford, for the support and maintenance of the ward for eleven years, at the rate of $100 per year, aggregating $1,100, for which he returned a voucher; retaining out of that sum his debt against R. J. Dunsford.

On July 23d, 1873, upon his own application, Weston was discharged as guardian, and Thomas R. Brown, the defendant, was appointed his successor, the then judge of Probate, Sanders D. Swygert, Esq., passing the following order: " It is ordered that the letters of guardianship of the personal estate of the

said Francis W. Dunsford, heretofore issued to William Weston, be and are hereby revoked, and that the said William Weston be and he is hereby required to transfer to his successor, Thomas R. Brown, such portion of said estate of the said infant which has come into his hands, and has not been disbursed, and be discharged from further accountability in respect thereto." Thomas R. Brown received from his predecessors the portion of the estate which had not been disbursed, and continued guardian until the settlement with the ward and discharge before stated.

The object of the action was not only to have an accounting *de novo* from Brown, the last guardian, but, also, through him, to reach alleged errors in the accounting of Weston, and make Brown and his sureties liable therefor on the ground that he, as last guardian, should have held Weston, his predecessor, to a strict account of the ward's estate, and especially for the $1,100 paid by Weston to the grandfather for the support and maintenance of the ward before he became guardian. The master, disclaiming any right to decide the legal question involved, except so far as was necessary in stating the accounts, restated, not only the account of Brown, disregarding his settlement with the ward and his discharge by the judge of Probate, but went back beyond Weston's discharge, and restated his accounts, disallowing $500 of the money paid to the grandfather, and charging Brown with the same, and also with some small matters of counsel fees paid by Weston, &c.

Both parties excepted, and the case came on to be heard before Judge Kershaw, who held that the Probate Court, upon proper proceedings, could grant a final discharge to a guardian who had fully accounted in that court, which might be pleaded in bar of an accounting sought in another court; that a judgment of a court of competent jurisdiction is an estoppel between the parties in regard to all matters which might have been properly brought into consideration in the action; and that the judgment of the judge of Probate, in discharging Brown, could not be collaterally attacked as proposed in this action.

"If the plaintiff, therefore, would have attacked this judgment, his very first step in the present action should have been to seek the judgment of the court to vacate it in order that he

might reach the account concluded by that order. This, however, he has not done, but has come into court on a complaint for an accounting alone, which is the very matter in respect of which he is concluded. Ordinarily, this would be the end of plaintiff's case; but it has happened here that, notwithstanding the estoppel, he has been permitted to speak the truth. All the evidence and arguments upon the issue presented by the complaint and answers have been heard, which might have been heard had the proceedings been in the first place to set aside the order of discharge, and, also, for an accounting, which would undoubtedly have been the plaintiff's proper course of procedure. The question, therefore, presents itself, Shall the court proceed to give the judgment which, upon the evidence before it, justice demands, or shall it dismiss the complaint without prejudice to the right of the plaintiff to proceed *de novo* as indicated ? "

The judge then, supposing that he had the power, under section 194 of the code, to amend the complaint before or after judgment in furtherance of justice, so as to conform it to the facts found, regarded the form of action as changed into a direct attack upon the settlement, receipt and discharge, and, in that view, pronounced judgment, setting aside not only the settlement and discharge of the Probate judge, but the receipt of the plaintiff himself, and ordering Brown to account *de novo* for his own transactions; but exonerating him from accountability on account of the alleged errors in the account of his predecessor, Weston.

From this decree both parties appealed to this court upon numerous exceptions, relating, for the most part, to different items of the account, but, from the view taken, it will not be necessary to set them out at length, or to consider any of them except the defendant's. 1. "That his Honor erred in refusing the motion of defendants to dismiss the complaint, the cause of action therein stated not being sustained." We think the first view of the Circuit judge was the correct one, viz., that the action being simply for an account against Brown and his sureties, ignoring the existence of the settlement and the receipt in full of the ward after he came of age, and the discharge of the guardian by the Probate judge, could not be maintained,

and should have been dismissed. The judge of Probate has jurisdiction in relation to the duties imposed by law upon guardians, and the management and disposition of the estates of their wards, and certainly some consideration is due to a settlement made by a Probate judge between a guardian and his ward, and his consequent discharge of the guardian.

As well stated by the Circuit judge, " the first point to be considered, was as to the effect of the settlement in the Probate court, and the receipt of the plaintiff to the defendant, Brown, as guardian, and the discharge of the latter by the order of the judge of Probate." These were, at least, *prima facie* good, and must remain in full force and effect until set aside in a direct proceeding instituted for that purpose. If, as alleged, they were informal or irregular, that could not be reached by a collateral proceeding. The scope of the plaintiff's action was for a simple account, collateral in its character, and under it the settlement and discharge could not be assailed ; and it seems to us that, after trial on the issues joined, and without actual amendment, it was too late to consider the whole form and character of the action changed, and to pronounce judgment according to the new form given to it.

It is true that the provisions of the code are very liberal in allowing amendments, and we are thoroughly in accord with that spirit, in so far as it presents the requirements of form from degenerating into mere technicalities ; yet it seems to us that it may be possible to fall into the opposite extreme, and in the effort to dispense with all form, to produce confusion, uncertainty and injustice. Section 194 of the code is in these words : " The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved."

This certainly gives a large discretion in the matter of amendments, but the provision itself shows that some limit was

contemplated. The power is given to conform the pleadings to the facts proved only, "when the amendment does not change substantially the claim or defense." When does it do so? This is one of the questions under the code upon which there is great diversity of opinion. Several of the States have a provision identical with ours, but the decisions upon the subject are not in accord. Mr. Pomeroy, at section 566 of his work on "Remedial Rights," says: "In giving a practical interpretation to this clause of the codes, a conflict of decision has arisen among the tribunals of the different States which it is impossible to reconcile." This much, at least, may be considered certain, that there is a difference in the practice as to amendments before and after judgment. As to those before trial, we think we can see a good reason for great liberality, as it is not desirable to defeat an action for error of form, merely, if there is merit in it. In such case the party proposing an amendment is put on terms as to costs, &c., and the defendant is entitled to notice and time to meet the case made. *Cleveland* v. *Cohrs,* 13 *S. C.* 400; *Coleman* v. *Heller, Id.* 494.

But it is not so clear what should limit the power of making amendments after trial, "conforming the pleadings to the facts proved." In the section from Pomeroy aboved cited, he goes on to say, that whilst a different rule is adopted in some States, "the rule is settled by one class of cases, and prevails in certain States, that in all the voluntary amendments which a party may make, as a matter of course, in his own pleadings, and in all amendments before trial, &c., he cannot under the form of an amendment change the nature and scope of his action; he cannot substitute a wholly different cause of action in place of the one which he attempted to set up in his original pleading. * * * In respect to the amendments made at the trial, or on appeal, or by the court upon its own motion, great freedom is used, provided the parties are not misled and surprised, and the issues to be decided are not wholly changed, &c. When evidence has been received without objections, making out a cause of action, &c., the utmost liberality is shown by the court in conforming the averments of the pleadings to the case as proved, if the ends of justice will be subserved thereby, &c."

As we understand it, the fundamental principle of pleading is, that the matter upon which the judgment of the court is sought shall be clearly stated, and the party charged notified, that he may make his own answer to it. It is not mere form, but substance, that such party shall have an opportunity to be heard upon the very issue that is to be decided, for he is necessarily surprised if one issue is tried and another decided.

The Circuit judge was doubtless led to consider the cause of action as changed in form by the fact that the master had already taken the testimony on the accounting, and it seemed to him useless to dismiss the case only that it might be resumed in a different form. He says: "But it has happened here that, notwithstanding the estoppel, he has been permitted to speak the truth. All the evidence, and all the arguments upon the issues presented by the complaint and answer have been heard, which might have been heard had the proceedings been in the first place to set aside the order of discharge," &c. But who could say whether the defense would not have been different, and other testimony offered, if the action had been to vacate the proceedings, instead of for a simple account? At all events, the defendants never had an opportunity to meet the new issue.

Besides, under the issues joined, it was error to order the account stated until the matter pleaded had been disposed of. Until that was done, it was premature to state the account, and the testimony was inadmissible, except as taken to save time and subject to objection. We think it was error, after trial, to consider the whole cause of action changed by amendment and a new issue made. *Wait's Anno. Code* 324 *and notes.* As was said by the chief justice in *Fitzsimons* v. *Guanahani Company*, 16 *S. C.* 197: "We think it was error on the part of the judge thus, in the midst of the conflict, to change the whole character of the action from the cause upon which it was originally established to a new basis not appearing in the pleadings, and without opportunity on the part of the defendant to meet and resist it."

But if the action had been brought directly for the purpose of setting aside the settlement and discharge, we do not see the evidence to sustain that judgment. There can be no doubt that a settlement was made with the ward after he came of age, who

received the money, gave his receipt in full, and the guardian was discharged by the Probate judge. We suppose that the settlement and discharge were not *prima facie* involved, and what evidence is there to impeach the transaction? The only circumstance tending in that direction is the fact that the settlement was made soon after (the day after) the ward came of age, but that alone was not sufficient to overthrow it, if there was on the part of the guardian, Brown, no concealment, misrepresentation, imposition or fraud.

There is a nice principle of law, that a settlement made by a guardian with his ward soon after he comes of age, is, on account of the relation of the parties, looked upon with great jealousy and scrutinized closely. Judge Story states the principle as follows: "But courts of equity proceed yet further in cases of this sort. They will not permit transactions between guardians and wards to stand even when they have occurred after the minority has ceased, and the relation becomes thereby actually ended, if the intermediate period be short, unless the circumstances demonstrate in the highest sense of the terms the fullest deliberation on the part of the ward and the most abundant good faith (*uberrima fides*) on the part of the guardian." 1 *Story Eq. Jur.*, § 317.

Apply this test to the facts here, and it seems to us that they come up to the rule. It appears that in the settlement the guardian did not secure to himself any personal advantage, but that every dollar received by him and not disbursed, was paid over to the ward. This circumstance distinguishes the case from that of *Hylton* v. *Hylton*, 2 *Ves.* 549, and other cases of that class, where the ward made a donation to his late guardian. Over and above the claim that Brown should account for the errors, if any, of his predecessor, Weston, which was unfounded, the whole extent of the complaint against him was, that he retained illegally a few dollars for his expenses in going to Columbia, and paid too much for counsel fees and commissions to the judge of Probate. He was instructed by his legal adviser to pay these demands, they were vouched by the Probate judge, and, whether the payments were properly made or not,

they did not touch in the remotest degree the question of his good faith.

It certainly does not appear that there was on the part of the guardian any concealment, misrepresentation or fraud. It seems to us that he acted with great frankness and fairness. The settlement was not made privately, but publicly, in the Probate office. The judge of Probate stated the accounts, and explained them to the ward. The accounts were not complicated or difficult to understand. The estate did not consist of securities, as to the value of which there was concealment, as in *Womack* v. *Austin*, 1 *S. C.* 421; but in cash then paid over. Mr. Crawford, the Probate judge, testified: "After having explained the matter as fully as I could with the lights before me, I drew up the receipt at the instance of all the parties. I also read it over to Dunsford carefully, after explaining to him the contents; the information I gave Dunsford being based upon the statement I had received from Colonel Brown and Captain Huguenin, Colonel Brown having assured me that the final return contained a full statement of all the estate of the ward he had received, which was otherwise shown upon the signing of the receipt; I paid over to Mr. Dunsford the money referred to in the receipt. Mr. Dunsford in no way questioned the proceedings; if he had, I would not have granted the final discharge; could see, as he drew it, was rather jubilant at getting the $1,400." Brown testified: "We tried to see the judge of Probate on the day Dunsford was twenty-one years of age, but he was not at his office, and I and Dunsford remained here (Columbia) that night and the next day, that is, the day after he was twenty-one years old; we had the settlement in the judge of Probate's office, when he signed the receipt produced here. I should say that Dunsford had explained to him all the particulars of the estate, because Crawford explained them to him, and Crawford asked him if he was satisfied, and he said 'yes.' Nothing was concealed from him; that is a thing I would not do," &c.

We think that the guardian acted with perfect good faith, that he derived no personal bounty or advantage from the settlement to himself, and that the ward was informed so far at least as Brown's transactions were concerned.

The judgment of this court is that the judgment of the Circuit Court be reversed and the complaint be dismissed.

A petition for rehearing was filed, upon which, December 4th, 1883, the following order was passed:

PER CURIAM. We have reread the brief in this case and carefully considered the grounds stated for a rehearing.

*First.* It is claimed to have been an oversight in the court to proceed upon the assumption that Thomas R. Brown was discharged as guardian by the Probate judge. The judgment of this court is not based upon that assumption. The evidence upon the subject was not overlooked, but was carefully examined before the judgment was pronounced. The Circuit judge considered the discharge proved, and it did appear in the settlement between Brown and his ward on May 21st, 1880; that there was an item of $12 (charged with the knowledge of Dunsford) for "letters dismissory," and from the proof in the case it is clear that all the parties, the Probate judge, Brown and Dunsford, understood as a matter of fact that the Probate judge had discharged the guardian; yet as there was not in evidence any formal proof of an order of discharge, the judgment of this court was rested on the settlement between the parties pleaded in bar, which, under an action for simple account, ignoring entirely the existence of the settlement, was conclusive between the parties, there being neither allegation nor proof of any misrepresentation, undue influence, imposition or fraud in the said settlement. *McDow* v. *Brown,* 2 *S. C.* 95; *Murrel* v. *Murrel,* 2 *Strobh. Eq.* 148.

*Second.* It is further suggested that the defendant had abandoned the defense of "settled account" in the office of the Probate judge. This matter also was considered before the judgment was pronounced. The cause had been referred to the master merely to take the testimony and state the account. In making his report he did make the statement that "this transaction was at first relied on by the defendants as a bar to the further accounting, but they subsequently abandoned their position." But it appears that the defendants excepted to this

report upon the ground that "the master erred in striking out any of the vouchers presented by the defendant, Brown, his duty being to state the account as presented, with the testimony given in their presentation, leaving the decision of their admissibility to the court."

The difficulty was produced, by the order "to state the account" before the plea in bar was disposed of. At first the defendant objected to going into the account at all until the plea was disposed of, and that was the logical order of proceeding; but as the order of reference required the accounts to be taken, the defendants abandoned that position so far as to allow the evidence to be taken and the account stated, but still insisted that its admissibility should be left to the decision of the court. After this, Judge Kershaw considered the question, applying the evidence thus taken to the plea in bar, and deciding it adversely to the defendants; they appealed to this court, "Because his Honor held that the receipt given by the plaintiff is in no sense a bar to the accounting." In this court both parties argued this question. Under these circumstances, it was impossible to disregard a formal plea on the record, never withdrawn and still contested, for no other reason than a statement of the master that the defendants "had abandoned their position." Such statement of the master was not binding, and the whole conduct of the case shows that he misapprehended the position that was abandoned.

It is always matter of regret that any party should be misled; but, in the face of the facts, this court was bound to consider the plea of settlement, which was formally made and never formally withdrawn; but, on the contrary, was considered on the Circuit, made prominent in the appeal to this court, and argued here by the counsel on both sides, and which, in fact, constituted the defense; and, therefore, we cannot see how it can be properly said that the petitioner was misled.

*Third.* As to the claim of the petitioner to charge Brown with alleged errors in the accounts of Weston, the former guardian, this court simply concurred with Judge Kershaw that it could not be allowed.

The petition for a rehearing is refused.